IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISTIAN FLORES-RIVAS,<br><br>Defendant. | Case No. 1:26-MJ-80 |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Robert Welsted, being duly sworn, state the following:

1. I am a Ranger with the United States Department of the Interior, National Park Service ("NPS"). As a Ranger with NPS, I am a federal law enforcement officer and I have received specialized training and have conducted numerous investigations relating to violations of the Virginia Code, the Code of Federal Regulations, and Title 18 of the United States Code.

2. My duties as an NPS Ranger include investigating criminal violations of the Virginia Code, Code of Federal Regulations, and Title 18 of the United States Code, and, as warranted, seeking prosecution of offenders.

3. This affidavit is submitted in support of a criminal complaint charging that, on or about March 14, 2026, in Manassas National Battlefield Park, within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia, the defendant, Cristian Flores-Rivas ("FLORES-RIVAS"), possessed a machinegun, in violation of 18 U.S.C. § 922(o).

4. The facts and information contained in this affidavit are based upon my training, my experience, personal knowledge, and observations made by other law enforcement officers

during the course of this investigation. This affidavit contains information necessary to support probable cause, but it is not intended to include each and every fact and matter observed by me or known to the United States.

## SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE

5. On March 14, 2026, at approximately 1637 hours, I was on patrol within Manassas National Battlefield Park in full National Park Service law enforcement uniform and operating a fully marked United States Park Ranger patrol vehicle. I was positioned stationary on Sudley Road near the entrance to Chinn Ridge facing southbound.

6. At that time, I observed a beige Honda Civic bearing Virginia registration TAP1802 traveling northbound on Sudley Road south of my location at a high rate of speed which I visually estimated to be approximately 50 miles per hour. The posted speed limit in that area is 35 miles per hour. Based on my training and experience, the vehicle was traveling at an unsafe speed for the roadway, in violation of 36 C.F.R. § 4.22(b)(1).

7. I conducted a U-turn and followed the vehicle as it turned onto northbound Lee Highway. I activated the emergency equipment on my marked patrol vehicle and initiated a traffic stop. The vehicle stopped at the Robinson House pullout.

8. As the vehicle came to a stop, I observed the operator reaching toward the glove compartment area and beneath the front passenger seat.

9. I approached the vehicle and contacted the operator. I identified myself as a United States Park Ranger and explained the reason for the stop. The operator provided a Virginia driver's license, identifying him as CRISTIAN FLORES-RIVAS. When asked if there were any weapons in the vehicle, the operator stated there were none. FLORES-RIVAS spoke clear English and understood my English-language questions and commands.

10. After I asked for the vehicle's registration, FLORES-RIVAS placed a phone call and spoke in Spanish asking if the registration was in the vehicle. After the call, he stated that he believed the registration was at a residence. When I asked him to check the glove compartment, FLORES-RIVAS slightly opened the glove compartment, briefly removed a folded note, quickly placed it back, and closed the glove compartment.

11. Due to FLORES-RIVAS's movements toward areas where weapons are commonly concealed, I asked him to step out of the vehicle. After exiting the vehicle, he stated that the registration was "definitely" at a residence. I directed him to step toward the rear of the vehicle. When I asked if I could search him for weapons, he immediately responded, "I've got the registration," and pointed toward the front passenger area of the vehicle where the glove compartment is located. He then walked away from the rear of the vehicle and toward the front passenger door of the vehicle.

12. When I directed FLORES-RIVAS to remain at the rear of the vehicle, he continued walking toward the front passenger door, stating that he was going to retrieve the vehicle registration. I then gave multiple clear and lawful commands instructing him to return to the rear of the vehicle. FLORES-RIVAS disregarded these commands, opened the front passenger door, and attempted to access the vehicle.

13. Due to officer safety concerns and the possibility of weapons inside the vehicle, I grabbed FLORES-RIVAS's arm to prevent him from re-entering the vehicle. FLORES-RIVAS physically pulled away and actively resisted my attempts to detain him. FLORES-RIVAS continued pulling away and attempted multiple times to move back toward the vehicle despite repeated commands to stop resisting and place his hands behind his back.

14. After a brief struggle, I was able to bring FLORES-RIVAS to the ground; however, he continued resisting until Officer Roman arrived on scene and assisted me. Together we were able to gain control of FLORES-RIVAS and place him in handcuffs. FLORES-RIVAS was placed under arrest at approximately 1644 hours.

15. The force used consisted of physical control techniques and body positioning necessary to overcome the subject's active resistance and prevent his return to the vehicle. The force applied was reasonable and necessary to safely place the subject into custody.

16. Following the arrest, a search incident to arrest was conducted. During the search, a Glock 17 9mm handgun, bearing serial number AGND209, was located concealed on FLORES-RIVAS's person in his pants on his left thigh. The firearm contained a loaded magazine with thirteen (13) rounds of 9mm ammunition; however, no round was present in the chamber.

17. The firearm was equipped with an auto sear switch. Based on my training and experience, an auto sear switch is a device designed and intended to convert a semi-automatic Glock pistol into a firearm capable of firing more than one round automatically with a single function of the trigger. Under federal law, a firearm equipped with such a device, or the device itself, meets the statutory definition of a machinegun as defined in 18 U.S.C. § 922(o).

18. The Glock 17 handgun is compatible with standard and extended magazines designed for that model, including a 40-round extended 9mm magazine and a 50-round drum-style 9mm magazine recovered from the vehicle. The combination of the Glock handgun, auto sear device, and large-capacity magazines allows for multiple rounds to be fired automatically without manual reloading, consistent with the statutory definition of a machine gun.

19. I know that Glock firearms are manufactured only in locations outside the Commonwealth of Virginia. Subsequent investigation determined, through the Spotsylvania County Sheriff's Office, that the Glock 17 handgun had previously been reported stolen in 2024.

20. Prince William County Police Department units arrived on scene to assist with the vehicle's other two passengers. Prince William County Police Department officers and Officer Roman conducted an inventory of the vehicle. The vehicle was subsequently towed by Gainsville Towing.

21. Inside a backpack located in the trunk, officers located three "Kellogz Nightmarez" style zip bags. Two of the bags were empty and one bag contained four blue pills marked "M" on one side and "30" on the other, suspected to be fentanyl. Also located inside the backpack were ninety-four (94) DOSEWART resealable bags and an AWS-100 digital scale.

22. Also located in the trunk was a Maryland license plate bearing registration 25892CJ. A DMV records check revealed the license plate returned as not on file.

23. Emergency medical services were requested to evaluate the subject following the physical struggle. Medical personnel responded and offered evaluation; however, the subject declined medical attention.

24. The subject was placed in the rear of my patrol vehicle and advised of his Miranda rights at approximately 1703 hours.

25. Transport of the subject to the Alexandria Detention Center began at approximately 1730 hours with a starting mileage of 23,978. I arrived at approximately 1825 hours with an ending mileage of 24,017.

26. The subject was processed by the Alexandria Office of Sheriff and remanded to their custody pending pickup for his initial appearance.

27. All firearms, ammunition, suspected controlled substances, currency, and other items of evidentiary value recovered during the search incident to arrest and vehicle inventory were secured and processed as evidence. The evidence was transported to Manassas National Battlefield Park and secured in the park's evidence room in Evidence Locker #10.

## CONCLUSION

28. Based on the foregoing, I submit there is probable cause to believe that, on or about March 14, 2026, in Manassas National Battlefield Park, within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia, Cristian Flores-Rivas ("FLORES-RIVAS"), possessed a machinegun, in violation of 18 U.S.C. § 922(o).

Respectfully submitted,

Park Ranger Robert Welsted
National Park Service

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on March 16, 2026.

Honorable William B. Porter
United States Magistrate Judge